Thos. J. McCarty, Appellee, v. John Rochel *et al.*, Appellants.

1 **Will:** RECORD: EVIDENCE. The record of a transcript of a will, as contained in a book entitled "Miscellaneous Records of Recorder's Office" of a county named, showing a certificate of the clerk of the court where said will was probated attached thereto, and reciting that said will had been duly approved and allowed by the court, and that the paper attached is a full copy of such will and of its approval, is not competent evidence of such will and of the probate thereof.

2. **Deed:** RECITALS: EVIDENCE. Words in a deed describing the grantor therein as a widow, are not competent evidence of the fact that such grantor is the widow of a former owner of the property conveyed.

3. **Adverse Possession:** EVIDENCE. The enclosure of land with property adjacent thereto by one making no claim of title to either tract, and the occupation thereof for twenty-one years, is not sufficient to support a title by prescription.

*Appeal from Woodbury District Court.*—Hon. George W. Wakefield, Judge.

Saturday, May 21, 1892.

Action in equity to restrain the defendants from entering and building upon certain real estate. There was a hearing on the merits, and a decree in favor of the plaintiff. The defendants appeal.—*Reversed.*

*Marks & Mould*, for appellants.

*D. H. Sullivan* and *John N. Weaver*, for appellee.

Robinson, C. J.—Sioux City and Sioux City East Addition appear to have been platted together, and included portions of the west one-half of section twenty-eight and the east one-half of section twenty-nine, in township eighty-nine north, of range forty-seven west. Perry creek, a crooked stream, flowed from north to south on or near the boundary line between the

sections named. All that portion of the plat lying
east of Perry creek was named "Sioux City East Addi-
tion," and the remainder was named "Sioux City."
Block sixty-one, as shown by the plat as recorded, was
chiefly on the east side of the creek. The north half
of the block included six lots, of which three, numbered
one, two and three, fronted westward on Park street,
and three, numbered ten, eleven and twelve, fronted
eastward on Water street. The first three of these lots
were separated from the other three by an alley, which
extended from north to south, and intersected an alley
which extended across the block from east to west,
forming the south boundary of lots three and ten. In
the south half of the block, commencing at the south-
east corner, were lots seven, eight and nine, which
fronted eastward on Water street, and extended west-
ward to Perry creek, the north part of lot nine extend-
ing through to Park street. The southwest corner of
the block was west of Perry creek, and the tract of
ground southwest of the creek, with its accretions, con-
stitutes the premises in controversy. It now extends
one hundred and forty-five feet west of the creek. The
plaintiff claims that he is the owner of these premises,
and that they constitute lot six of the block named.
The defendants deny that the block contains a lot
numbered six, and contend that the tract in question
is a part of lots seven, eight and nine, owned by
defendant Rochel, who gave to his co-defendant, York,
permission to build a house upon it. Claiming under
that license, York took possession, and had constructed
thereon a foundation for a house, when this action was
commenced. The district court found that the plaintiff
was the owner of the tract, and enjoined the defend-
ants from claiming any interest therein adverse to the
plaintiff.

I. The tract occupies that part of the block which
would have contained lots four, five and six had the

south half of the block been completed and sub-divided as was the north half. It has been known and described on the tax lists and in conveyances as lot six, but the defendants deny that it was so designated on any valid plat of the town. The defendant Rochel has been in possession of the lots seven, eight and nine for many years, and has dug up large quantities of earth and clay from those parts of the lots next to Perry creek, in consequence of which the stream has been moved about eighty feet further east, and somewhat further north, thereby largely increasing the size of the tract west of the creek.

To show that the tract in controversy had been platted as lot 6, the plaintiff introduced in evidence a transcript of the original record of a plat made and recorded in September, 1856, prepared under the authority of section 1971 of the Code. That showed that the portion of block 61 southwest of the creek was platted and numbered 6. But the original from which the transcript was made showed no line indicated on the south side of the tract in question, and there were alleged defects in the execution of the plat which we need not notice. The defendants rely upon a plat made and recorded in the year 1858, which showed the tract south of the creek inclosed as a part of the block, but without a lot number. The effect of these plats and of some corrections alleged to have been made by a surveyor named Stone, is discussed by the appellants; but, as the appellee has not presented any argument in regard to them, we need only say that whether the tract in controversy was intended by the proprietors of the town plat to be a separate lot or a part of lots 7, 8 and 9 is not clearly shown. Rochel regarded it as a part of those lots, and in the work he did, which resulted in changing the course of the creek, he supposed he was only adding to his own land on the west side of the stream, and not to that of his

neighbor. The fact seems to be that but little atten-
tion was paid to the tract by any one until recently.
Now, that it has been largely increased in size, and is
valuable, it has become an object of interest.

It does not appear that the plaintiff was ever in
the actual possession of the land in question. If he
1. Will: record: recovers in this action, it must be on the
evidence.          strength of his own title, and the burden
is upon him to show that it is superior to that of the
defendants. It may be conceded, for the purposes of
this case, that he has traced title from the general
government to A. C. Dodge. To show that the title
had been transferred to Clara A. Dodge, his grantor,
he offered in evidence "Book L of miscellaneous
records of the recorder's office of Woodbury county."
That showed the record of a transcript of a will of
A. C. Dodge, which recites that the testator bequeathed
and devised to Clara A. Dodge, subject to the payment
of his debts, all his real and personal property. A
certificate of the clerk of the circuit court of Des Moines
county, attached, states that the will has been duly
approved and allowed by the court, and that the paper
to which it was attached was a full copy of the will
and of its approval. The defendants made due objec-
tion to the introduction of this record. In our opinion
the objection is well founded. When a will has been
duly approved and allowed, it is to be recorded in a
book kept for that purpose. Code, section 2343. A will
when proved and allowed shall have a certificate of
that fact indorsed on or annexed thereto, signed by
the clerk, and attested by the seal of the court. "And
every will so certified, or the record thereof, or the
transcript of such record, duly authenticated, may be
read in evidence in all courts without further proof."
Code, section 2342. In the case of a will probated in
another state or country, there are provisions for
recording a copy of such will in the probate records

of the counties of this state where land belonging to the estate of the testator is situated. Chapter 162, Acts of the Eighteenth General Assembly. There is also provision for recording in the proper probate records of any county in this state a copy of the original record of the appointment and qualification of any administrator or executor in any other state or country, including the will, if any, of the decedent, if probated, for the purpose of satisfying judgments, mortgages or other liens which appear of record in the counties where such copy is recorded. Chapter 103, Acts of the Twenty-first General Assembly. But there do not appear to be similar provisions applicable to domestic wills. The records referred to in sections 2342 and 2343 are to be made and kept in the county where the will is probated. The record introduced in this case was neither the record nor a transcript of the record, provided for by law, but an unauthorized record of a transcript, and it was, therefore, inadmissible. See *Morrison v. Coad*, 49 Iowa, 571.

II. The plaintiff claims that, if the evidence in question was inadmissible, yet he should recover, for the reason that he introduced in evidence deeds of Clara A. Dodge for the tract in question; that she is the widow of A. C. Dodge, and that by virtue of those deeds he acquired an interest in the tract which should be held paramount to the rights of the defendants. We do not find any competent evidence in the record showing that the grantor of the plaintiff was the widow of A. C. Dodge. One of her deeds recites that she is a widow, without stating that she was the widow of A. C. Dodge. But a statement in the deed to that effect would not have been competent evidence of the fact. *Costello v. Burke*, 63 Iowa, 364. A further objection to the claim now made is that it appears to be urged for the first time in this court.

2. DEED: recitals: evidence.

III. It appears that one Fogarty occupied the premises for many years. A deed from him purporting to convey them to the plaintiff, executed after the commencement of this action, was introduced in evidence. It is contended by the appellee that Fogarty had acquired title by prescription, and that the title he conveyed is paramount to that of the defendants. Fogarty claims to have occupied the premises about twenty-one years, but it appears that he had inclosed them with adjacent property which he did not own, and to which he made no claim of title, and had used the inclosure as a cattle yard and for other purposes. It clearly appears that his possession was not under a claim of title, nor adverse to the real owner, and no right can be maintained under it. We conclude that the plaintiff has failed to show that he is the owner of the tract in question, or that he is entitled to the possession of it.

3. ADVERSE possession: evidence.

The decree of the district court is, therefore, REVERSED.